IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIEL SANCHEZ BORGOS

   Plaintiff

           v.

VENEGAS CONSTRUCTION CORP, et al

   Defendants

Civil No.  07-1592 (SEC)

**OPINION AND ORDER**

Pending before the Court is a Motion for Summary Judgment (Docket # 31) filed by Defendants Venegas Construction Corp.("Venegas Construction") and Sanson Corp ("Sanson")(collectively "Defendants"), and Plaintiff's opposition thereto (Docket # 42). After considering all the filings and the applicable law, for the reasons stated below, Defendants' motion will be **GRANTED in part and DENIED in part**.

**Factual Background**

This action was instituted by Plaintiff, Daniel Sanchez Burgos ("Sanchez"), claiming age discrimination and retaliation pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 (2002) ("Law 100"), and Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194a(a) (2002) ("Law 115"), and Puerto Rico's Law 80, 29 P.R. Laws Ann. § 185(a) (2000), which prohibits termination without just cause.

Sanchez was a longtime employment of Venegas Construction, having worked continuously for the company since the 1960s. In fact, his relationship with Venegas Construction's management is even longer, as he worked under the supervision of Emilio Jose Venegas ("E.J. Venegas"), Venegas Construction's founder, beginning in the 1950s. In the

**CIVIL NO. 07-1394 (SEC)**                                                                                              Page 2

1990s, E.J. Venegas' son, Emilio M. Venegas ("E.M. Venegas"), became president of Venegas Construction.

Sanchez's job performance, as a construction site foreman, was undisputedly satisfactory, as is demonstrated by his long relationship with the firm, and that he never received any formal reprimands. However, he did have minor incidents with E.M. Venegas in 2005, regarding damage caused to a wall at a project, and bricks Plaintiff removed from a work-site. Docket # 31-2 (Defendants' Statement of Uncontroverted Material Facts ("D.S.U.M.F.")), ¶¶ 10-12.

Plaintiff finished his final job as a foreman with Venegas Construction, on or around, May 19, 2008. This project was at the company's Atlantic Pipe site. From here on out many of the relevant events are contested.

Plaintiff alleges that upon completion of the Atlantic Pipe site, when other workers were given orders to go to other Venegas Construction projects, he was called into the office to meet with E.M. Venegas, the company's acting president. Docket # 42-2 (Plaintiff's Statement of Uncontroverted Material Facts ("P.S.U.M.F.")), ¶¶ 11-12; see also Docket # 54-2 at 3. When they met, on May 24, 2006, Plaintiff alleges that E.M. Venegas inquired how old he was, and if he was receiving Social Security benefits. P.S.U.M.F., ¶ 13. Furthermore, Plaintiff alleges that E.M. Venegas informed him that he was going to get rid of some older employees, and that since Plaintiff was already receiving Social Security, the company would work out his retirement. P.S.U.M.F., ¶¶ 14; see also Docket # 42-3. Defendants admit that the topic of Plaintiff's Social Security benefits was breached, but that " . . . this was not directly asked by [E.M. Venegas]." Docket # 42-2 (Defendants Response to P.S.U.M.F., ¶13). However, E.M.

**CIVIL NO. 07-1394 (SEC)**                                                                 Page 3

Venegas squarely denies he told Plaintiff that the company wanted to "get rid of" older workers. Id. at ¶ 14.[1]

Plaintiff also alleges that following his May 24 meeting with E.M Venegas, he was sent home with two weeks paid vacation, so that the company could work out his retirement. P.S.U.M.F., ¶15. Defendants allege that he continued to work at the company's maintenance area. Plaintiff also alleges, and Defendants deny, that E.M. Venegas told him that there was no more need for him at Venegas Construction, and that his retirement would be worked out by the end of June. P.S.U.M.F., ¶ 15. Defendants then transferred Plaintiff to Sanson Corp.

While the occurrence of the transfer is undisputed, there is a controversy regarding the circumstances surrounding Plaintiff's move to Sanson Corp. in Santa Isabel, which is affiliated with Venegas Construction. Defendants argue that move was voluntary and temporary. See, e.g., Defendants' Response to P.S.U.M.F., ¶ 28. Plaintiff does not contest Defendant's assertion that "[w]hen [Sanchez] was hired to work for Sanson he was told the work was temporary." D.S.U.M.F., ¶ 28. However, the position at Sanson Corp. was for less remuneration than his position as a foreman at Venegas Construction. Moreover, beginning on June 5, 2006, Defendants moved Plaintiff from the Venegas Construction to the Sanson Corp. payroll. P.S.U.M.F., ¶ 28. These facts have not been contested. Therefore, this Court concludes that Plaintiff was in fact removed from his position at Venegas Construction on June 5, 2006.

Plaintiff worked at Sanson Corp. from the above mentioned date until December 4, 2006. No age related comments were made to Plaintiff during his time at Sanson Corp. While working with Sanson Corp., Plaintiff and E.M. Venegas had a second round of discussions regarding his

---

[1] Plaintiff also alleges that at around that time, E.M. Venegas' son, Ramon Emilio Venegas ("E.R. Venegas"), who also works at Venegas Corporation, told him that he was no longer wanted at the company because of his age. P.S.U.M.F., ¶ 19. This allegation is denied by Defendants. Id. ¶ 19.

**CIVIL NO. 07-1394 (SEC)**                                                                 Page 4

retirement. He was offered $10,000 and the company truck he used as a severance package. He accepted the truck as a gift, but refused the money, finding it insufficient for his years of service.

After this incident, Plaintiff contacted a lawyer and requested a formal clarification of his employment status with Venegas Construction. D.S.U.M.F., ¶ 29. Accordingly, on November, 29, 2006, Defendants wrote plaintiff stating that his services had not been needed at his last project, that he was working with an affiliate firm, that they had understood he wanted to retire, and that to resolve the controversy they would assign him to a new project in Mayaguez. See Docket # 35-4. It appears that the letter was never answered, as Plaintiff filed a discrimination charge with the EEOC against Venegas Construction on November 27, 2006. D.S.U.M.F., ¶ 35. Venegas Construction did not receive notification of the EEOC complaint until after December 18, 2009. D.S.U.M.F., ¶ 47.

Sanson Corp. is dedicated to extracting and producing sand, gravel, and other materials for the construction industry. The company ceased to extract aggregate material in September, 2006, and by the end of the year they were selling their extraction equipment, effectively preparing for closure. D.S.U.M.F., ¶ 63. On December 4, 2009, Sanson Corp. laid-off Plaintiff, along with other employees for economic reasons connected to the scaling down of its operations. D.S.U.M.F., ¶ 60.

After he was laid off from Sanson Corp., on December 18, 2006, Venegas Construction made a $1,000 loan to Plaintiff, under the stipulation that he would repay the amount out of his paycheck. However, Plaintiff denies that this was his intention when he signed the agreement. Nevertheless, it is immaterial for this analysis, because it occurred long after the original negative employment action against Plaintiff, and after the offer of reinstatement. D.S.U.M.F., ¶ 41.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Id. at 684. At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

**Civil No. 07-1592 (SEC)**  6

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The "non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue...[f]ailure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.")

"A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting from Garside, 895 F.2d at 48 (1st Cir. 1990). Likewise, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over

it is resolved favorably to the non-movant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." Id. (citations omitted).

**Applicable Law and Analysis**

Defendants move for summary judgment on all claims on the following grounds: (1) Plaintiff has failed to adduce enough evidence to support a *prima-facie* ADEA, and Law 115 case, or show pretext, (2) Plaintiff has failed to produce evidence to support his retaliation claim; (3) Defendants allegedly never discharged Sanchez from his employment at Venegas Construction; (4) Plaintiff allegedly refused an unconditional offer to return to work which estoppels his damages claim under ADEA and Puerto Rico law from the date of the offer. Insofar as necessary, this Court addresses each argument in turn.

**I. ADEA & Law 100**

The ADEA makes it unlawful for an employer " . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome." Hoffman v. Applicators Sales and Services, Inc., 439 F.3d 9, 17 (1st Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)). Under the ADEA, an employer may not "discharge ... or otherwise discriminate against any individual with respect to [his]

**Civil No. 07-1592 (SEC)**                                                                                                          8

compensation, terms, conditions, or privileges of employment, because of [her] age." 29 U.S.C. § 623(a)(1). Puerto Rico Law 100 has similar goals, and is similarly structured.[2]

Under the familiar McDonnell Douglas burden-shifting framework, in order to make out a *prima facie* case of age discrimination, Plaintiff must show that he: (1) was at least forty (40) years of age; (2) met the employer's legitimate job performance expectations; (3) experienced adverse employment action; and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged. Cordero-Soto v. Island Finance, Inc., 418 F.3d 114, 119 (1st Cir. 2005) (citing González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002)). Defendants concede that Plaintiff meets the first and third elements of the *prima facie* case, and tacitly concede the fourth element.

However, where there is direct evidence of discrimination, the McDonnell-Douglass framework is unnecessary. One way of showing that the employee was dismissed in violation of ADEA is "to show that discriminatory comments were made by the key decision maker or those in a position to influence the decision maker." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000); Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 675 (1st Cir.1998). Proving direct discrimination is not as easy as it might appear, because "stray workplace remarks, as well as statements made either by non decision makers or by decision makers not involved in the decisional process, normally are insufficient, standing alone, to

---

[2] "Under Puerto Rico's Law 100, a plaintiff has the initial burden to establish a prima facie case by '(1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir.2001). Having met this rather undemanding requirement, the burden of persuasion shifts to the employer to show, by a preponderance of the evidence, that it had 'good cause' for its action. See id. If the employer shows good cause, then, as under the ADEA, the burden of persuasion returns to the employee to show 'that the employer's decision was motivated by age discrimination.' Cardona Jiménez v. Bancomercio de Puerto Rico, 174 F.3d 36, 43 (1st Cir.1999). Ultimately, under Law 100, if the employer can establish good cause, the employee is faced with the same burden of persuasion as an employee bringing suit under the ADEA." Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007).

establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 (1st Cir. 2002)(internal quotations omitted). Nevertheless, in the case at hand, Plaintiff has proffered direct evidence, in the form of a sworn statement, that the president of the company, E.M. Venegas, told him that he was too old, and should retire, and stated that Defendants were looking to get rid of older workers. See Maldonado-Maldonado v. Pantasia Mfg. Corp., 956 F. Supp. 73, 81 (D.P.R. 1997). If true, this Court finds the above sufficient to establish a case of direct discrimination. Defendants deny that these statements were ever made, but this is a question of credibility, and cannot be disposed of through a summary judgment.

Nevertheless, the proof of direct discrimination is not necessary at present. Defendants argue that Plaintiff's claim does not pass the McDonnell-Douglass burden shifting analysis. They acknowledge that Plaintiff meets factors one and two of the test. Moreover, as stated above, this Court has concluded that Plaintiff was subject to an adverse employment action. Defendants' argument that Plaintiff was on authorized leave while both parties pondered his future lacks plausibility. The position at Sanson Corp. was for less remuneration than his position as a foreman at Venegas Construction. Defendants moved Sanchez from Venegas Construction to the Sanson Corp., and the company admits that the position was temporary in nature. This appears to be a dismissal from his former position, or at best, a demotion. Therefore, the third prong is satisfied.

Defendants also argue that Plaintiff fails in terms of the fourth prong, because he has not shown that the replacements were significantly younger than him, which they assert is necessary in an ADEA claim. See Docket # 31 at 15. Said contention is misguided, because the McDonnell-Douglas test merely requires that the employer ". . . [have] a continuing need for the services provided by the position from which the claimant was discharged." Cordero-Soto, 418

**Civil No. 07-1592 (SEC)** 10

F.3d at 119; see also Velazquez-Fernandez, 476 F.3d at 11. Defendants have not refuted Plaintiff's assertion that Venegas Construction had a continuing need for site foremen.

Accordingly, this Court finds that Plaintiff has met his burden of establishing a *prima facie* case of age discrimination. However, this does not end the inquiry. Under the McDonnell Douglas framework, once Plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Hoffman, 439 F.3d at 17 (citing González, 304 F.3d at 70). Defendants have not met that burden. In fact, their strategy, which attempts to deny Plaintiff suffered an adverse employment action, has made this impossible. Accordingly, Defendants motion for summary judgment is **DENIED** for Plaintiffs' ADEA and Law 100 claims against Venegas Construction. Likewise, as Defendants have failed to proffer cause for Plaintiff's dismissal, their motion for summary judgment for his Law 80 claims shall also be **DENIED**.

**Mitigation**

Beyond Defendants' unfruitful allegations that Plaintiff was never discharged, they make an additional allegation that they made an unconditional offer of reinstatement. D.S.U.M.F., ¶ 32. This is substantiated by a letter dated November 10, 2006. See Docket # 35-4, Exh. 2. Plaintiff does not contest the veracity of this letter. In fact, he uses it as evidence that Plaintiff had been discharged from Venegas Construction. See Docket # 42-1 at 9.

Successful ADEA claims often include back pay, but "an employer charged with unlawful discrimination often can toll the accrual of back pay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." Ford Motor Co. V. E.E.O.C., 458 U.S. 219, 231 (1982). However, Ford left this Court with the discretion to determine when conditions exist that would merit circumventing this

Civil No. 07-1592 (SEC)

11

policy. Refusal of an offer of reinstatement has often not affected back pay awards in the context of constructive discharge and harassment cases. Bayard v. Riccitelli, 952 F.Supp. 977, 988 (E.D.N.Y. 1997); Maturo v. National Graphics, Inc., 722 F.Supp. 916, 927 (1989).[3] Of course, employers cannot act like ludic cats, bating and toying with their employees trough insincere offers aimed at stemming off litigation.

The present case does suggest that Venegas Constuction made a good faith offer of reinstatement. D.S.U.M.F., ¶ 32. Plaintiff refused the assignment, because he was concerned that it was a pretext for laying him off again under the guise of economic reasons, and due to the fact that he was already in another, albeit lesser, position with Sanson Corp.  Nevertheless, given that the relevance of back pay only becomes a factor in the final award, this Court will reserve judgment on this issue, and its affect on back pay, pending final resolution of this action.

**Law 115 and ADEA Retaliation Claims**

Because of their similarity, and parallel evidentiary mechanisms, this Court will discuss retaliation under ADEA and P.R. Act 115 concurrently. See Rivera Rodriguez v. Sears Roebuck de Puerto Rico, Inc., 367 F.Supp.2d 216, 230 (2005).

ADEA prohibits retaliation, and an employer may not discriminate against an employee who has "opposed any practice made unlawful by this section" or who has ". . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C.A. §623(d). Law 115 has similar goals.  In order to establish a *prima facie* case of retaliation, an ADEA or Law 115 plaintiff must show that: (1) he engaged

---

[3] In the context of mitigation under Title VII, the First Circuit has acknowledged that two other circuits ". . . have ruled that an accommodation offer after an adverse employment action does not shield an employer from liability under Title VII." Clouthier v. Costco Wholesale Corp., 390 F.3d 126, 134 (1st Cir. 2004).

in ADEA-protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action. Ramírez-Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991)). As before, if the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for its action. Id. Once the employer shoulders that burden, the plaintiff must show that the employer's proffered reason is "a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA". Id. In order for the plaintiff to ultimately succeed, it is unnecessary for an actual ADEA violation to have occurred; it is enough for plaintiff to have a good-faith belief that such a violation indeed took place. Id.

Defendants assert that Plaintiff cannot establish the third prong of the *prima facie* case: the causal connection. Plaintiff points to the temporal proximity between the ongoing complaint and the adverse employment action. He also points out that Defendants were cognizant he had contracted legal counsel. Nevertheless, there is evidence that Defendants did not know Plaintiff had filed a complaint with the EEOC when he was released from Sanson Corp.

Furthermore, this question is moot because they have proffered a legitimate non-discriminatory reason for his dismissal: the reduction of the labor force, and reduction of operations at the plant. See Rosen v. Casiano Communications, Inc., 971 F.Supp. 61, 64 (D.P.R. 1997). These economic reasons are understandable, and constitute good cause both under ADEA, Law 115, and Law 80. Furthermore, Plaintiff has not referred to any retaliatory actions by any Sanson Corp.'s employees or managers, and has failed to show retaliatory animus. Id. at 63. This Court will reiterate that Plaintiff admits that no comments about his age were made during the period he worked at Sanson Corp. See Ramirez-Rodriguez v. Boehringer Ingleheim, 425 F.3d 67, 86 (1st Cir. 2005). Moreover, during this same period, Defendants tendered Plaintiff an offer to return to Venegas Construction, which he turned down.

In light of the foregoing, this Court cannot conclude that the articulated reasons for Plaintiff's discharge from Sanson Corp. are pretextual or a sham. Accordingly, Defendants' motion for summary judgement is **GRANTED** as to the retaliation claims. Plaintiff's retaliation claims are hereby **DISMISSED WITH PREJUDICE**. Likewise, Sampson Corp. was not involved in the original act of alleged discrimination, which now occupies the core of this lawsuit, therefore all claims against Sampson Corp are **DISMISSED with prejudice**.

**Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED in as to Sanson Corp. and the retaliation claims, and DENIED for all claims against Venegas Construction**. Judgment will be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 31st day of March, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge